**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| DIETGOAL INNOVATIONS LLC | § | |
| | § | |
| v. | § | Case No. 2:12-CV-566-JRG-RSP |
| | § | |
| DUNKIN' BRANDS GROUP, INC. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Dunkin' Brands Group, Inc.'s ("Dunkin'") Motion to

Transfer Venue to the District of Massachusetts (Dkt. No. 4, filed August 7, 2012).  Dunkin'

argues that the District of Massachusetts is a clearly more convenient forum for this case.

Plaintiff DietGoal Innovations LLC opposes transfer.  After considering all of the record

evidence and weighing the various factors, the Court finds that the Eastern District of Virginia is

a clearly more convenient venue that has superior connections to this case as compared to either

venue proposed by the parties.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."   28 U.S.C. § 1404(a) (2006).  The first inquiry when

analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which

transfer is sought would have been a district in which the claim could have been filed."   *In re*

*Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the

convenience of parties and witnesses as well as the interests of particular venues in hearing the

case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In*

*re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d

1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**DISCUSSION**

A.     **Proper Venues**

The parties do not dispute that this case could have been brought in the District of Massachusetts or the Eastern District of Texas.  DietGoal contends that this suit could be brought in the Eastern District of Virginia, and Dunkin' "[does] not dispute that this case could have been filed in the Eastern District of Virginia. . . ."  (Dkt. No. 41.)

B.     **Private Interest Factors**

1.     **Cost of Attendance for Willing Witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009).  While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis.  *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide."  *In re Genentech, Inc.*, 566 at 1343.  However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ."  *Id.* at 1343-44.

**Defendant Dunkin's Witnesses**

Dunkin' maintains its principal place of business in Canton, Massachusetts.  (Innes Decl., Dkt. No. 4-2.)  In support of its motion, Dunkin' relies on a declaration by Ewan Innes, Manager, Web, e-Commerce, and Portal.[1]  (*Id.*)  According to Mr. Innes, the Dunkin' employees involved

---

[1] The Court notes that a subsequent declaration of Mr. Innes alleges that he has left the company.  (*See* Dkt. No. 41-2.)

in the design, development, operation and maintenance of the accused systems are located in Canton, MA.  (*Id.*)

### Plaintiff DietGoal's Witnesses

Timothy Salmon and Daniel Mitry, the managing members of DietGoal, reside in New York City.  Given Dunkin's contention that Mr. Salmon and Mr. Mitry have merely acquired the asserted patent in order to bring this suit, they appear to have little relevant evidence to offer as compared to normal "party" witnesses.

### Third Party Witnesses

*Inventor and Practicing Entity*

Dr. Oliver Alabaster, the inventor of the asserted patent, is a third party witness who resides in Alexandria, Virginia.  (Resp. at 1; Mot. at 4.)  Dr. Alabaster is also the founder and chief executive officer of DietFit, Inc., the third party entity that practices the asserted patent. DietFit is located in Alexandria, Virginia.  (*Id.*)  Alexandria is located in the Eastern District of Virginia.

After the Court ordered the parties to submit limited supplemental briefing directed to whether this case could have been brought in the Eastern District of Virginia, Defendant questioned for the first time whether Dr. Alabaster is in fact a third-party witness.  (Dkt. No. 41 at 1-2.)  The basis for this contention is that DietGoal's initial disclosures identified Dr. Alabaster as a member of DietGoal.  DietGoal has submitted evidence showing that it lawyers erred in identifying Dr. Alabaster as a member of DietGoal, and clarified that his only relationship to DietGoal is that he is entitled to royalty payments.  (Dkt. No. 43.)  The Court accepts DietGoal's representations, and accordingly finds that Dr. Alabaster is properly considered a third-party witness.

*Prosecuting Attorney*

Steven Kelber, the attorney that prosecuted the asserted patent, has an office in Bethesda, Maryland.  (Mot. at 4.)  Bethesda is in the District of Maryland.  However, Mr. Kelber is within the subpoena power of the Eastern District of Virginia.

*Prior Art Witnesses*

Neither party addresses the location of prior art witnesses.  However, there are 11 U.S. patents and patent applications that have previously been identified by other defendants as potential prior art.  All are cited on the face of the asserted patent.  Two of the references list inventors in Virginia, two of the references list inventors in New York, and the remaining inventors are in other states or overseas.  (Mot. at 5.)

*Dunkin's Developers*

Dunkin' identifies several third parties affiliated with several different companies that were allegedly involved in the "design, development, operation and maintenance of . . . the accused product/website."  (Dkt. No. 41-2.)  Other than a general statement that those identified have "potentially relevant knowledge," Dunkin' does not state what their role was in the design/development.  (*Id.*; *see also* Dkt. No. 41-1 and 41-3.)  Dunkin' also does not state what information each party may possess or the materiality of such information.  (*Id.*)  Although Dunkin' is under no obligation to identify "key witnesses," or show "that the potential witness has more than relevant and material information," this Court observes no information in the record to indicate that the relevance and materiality of the information that may be provided by Dunkin's third party witnesses is greater than the parties detailed above.  *In re Genentech, Inc.*, 566 at 1343-1344.

After considering all the evidence relevant to the convenience factor, the Court finds that the convenience of the witnesses weighs in favor of transferring this case to the Eastern District of Virginia and the District of Massachusetts.  The Eastern District of Virginia appears to be the most convenient forum for the specifically identified third party witnesses such as Dr. Alabaster and Mr. Kelber.  Dr. Alabaster, as an inventor and executive of a practicing entity, appears to be a particularly important third party witness.

### 2.        Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).  "Dunkin' Brands' technical, marketing and sales documentation and personnel relating to the accused product/website are all located in Canton, Massachusetts." (Innes Decl. at 5, Dkt. No. 4-2.)  DietGoal does not identify any particular sources of its own proof.  There is likely to be discoverable evidence from Dr. Alabaster and DietFit, which would be located in Alexandria, Virginia.  Given that the parties do not describe the type or quantity of evidence at any location, the Court finds that this factor should be given less weight. Nonetheless, this factor weighs in favor of transferring this case to the District of Massachusetts and the Eastern District of Virginia.

### 3.        Availability of Compulsory Process to Secure the Attendance of Witnesses

Dunkin's employees and third party developers are within the subpoena power of the District of Massachusetts.  DietGoal's two members are within the subpoena power of the Southern District of New York.  There may be two prior art witnesses each within the subpoena power of the Southern District of New York and the Eastern District of Virginia.  Dr. Alabaster (inventor) and Mr. Kelber (prosecuting attorney) are witnesses within the subpoena power of the

Eastern District of Virginia.   Neither party has identified any witnesses that are within the subpoena power of the Eastern District of Texas.  The Court finds that this factor weighs in favor of transferring this case to the Eastern District of Virginia, the District of Massachusetts and the Southern District of New York.

### 4.      All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that this factor weighs in favor of transfer to the Eastern District of Virginia.  There are no pending cases involving DietGoal in the District of Massachusetts, but at least five other cases are pending in the Eastern District of Virginia.[2]

## C.      Public Interest Factors

### 1.      Local Interest in Having Localized Interests Decided at Home

Dunkin' argues that the District of Massachusetts has a substantial connection to this case because Dunkin' is headquartered there, and that "Bostonians and other Massachusetts residents have taken great pride in their association with Dunkin' Brands since 1950."  (Mot. at 13.)  The Court notes that the connection alleged by Dunkin' is not a connection to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather arises from the fact that some residents of the Eastern District of Michigan may have an interest, financial and otherwise, in Dunkin' itself – a theory that raises concerning fairness implications.  545 F.3d at 318.  The Court observes that the Eastern District of Virginia has a strong localized interest in this case because it is the situs of the inventive activity, and the entity formed to commercialize and practice the invention (DietFit) is presently located in the district.  The Court finds that this factor weighs in favor of transfer to either the Eastern District of Virginia.

---

[2] DietGoal v. Scripps Network, 1:13-cv-00465; DietGoal v. Bravo Media, 1:13-cv-00522; DietGoal v. Wegmans Food Markets, 2:13-cv-00154; DietGoal v. Time, 2:13-cv-00252; DietGoal v. Meredith, 2:13-cv-00271.

2.      **Familiarity of the Forum With the Law that Will Govern the Case, Administrative Difficulties Flowing From Court Congestion, and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The Court finds that the remaining public interest factors are neutral.


**CONCLUSION**

After considering all of the relevant evidence and factors, the Court finds that Eastern District of Virginia is a clearly more convenient venue.  Accordingly, it is **ORDERED** that this case be transferred to the Eastern District of Virginia.

**SIGNED this 2nd day of July, 2013.**


ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE